JUDGE GARDEPHE

08 CV 7674

Peter N. Wang (PW 9218)
Yonaton Aronoff (YA 3492)
FOLEY & LARDNER LLP
90 Park Avenue
New York, New York 10016
(212) 682-7474

Eric Greenwald (EG 7095)
GREENWALD LAW FIRM PLLC
255 West Rivo Alto Drive
Miami Beach, Florida 33139
(305) 610-9923

*Attorneys for Plaintiff Jonathan D. Gormin*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RECEIVED
SEP 02 2008
U.S.D.C. S.D. N.Y.
CASHIERS

---------------------------------------------------------------X

JONATHAN D. GORMIN, an individual,

      Plaintiff,

-vs-

ANDREW HUBREGSEN, an individual,
MICHAEL BONNET, an individual,
HB EQUITY ASSOCIATES, LLC, a Delaware
Limited Liability Company,
HUBREGSEN BONNET EQUITY PARTNERS, L.P.,
a Delaware Limited Partnership, AC 701 LLC,
a Delaware Limited Liability Company and
AC 702 CORPORATION, a Delaware Corporation,

      Defendants.

08 Civ._____

**COMPLAINT**

**JURY TRIAL DEMANDED**

---------------------------------------------------------------X

Plaintiff Jonathan D. Gormin, by his attorneys Foley & Lardner LLP and Greenwald

Law Firm, PLLC, for his Complaint against defendants, alleges as follows:

## NATURE OF THE ACTION

1.    In this action, plaintiff Jonathan D. Gormin ("Gormin") seeks damages and

other relief as a result of the unlawful conduct of defendants in attempting to strip Gormin of his

financial rights and ownership interest in HB Equity Associates, LLC ("HB Equity Associates" or

the "Fund GP"), the General Partner and more than 98% owner of the private equity fund

Hubregsen Bonnet Equity Partners, L.P. (the "Fund"). In breach of their fiduciary, contractual and

other legal duties to Gormin and only months after Gormin's valuable ownership interests fully

1

vested, Andrew Hubregsen ("Hubregsen") and Michael Bonnet ("Bonnet"), in their respective capacities as the Managing Members of HB Equity Associates, wrongfully caused the Fund to manufacture a completely contrived "cause" to terminate Gormin from his employment with the Fund's Investment Manager, HB Equity Partners, L.P. ("HB Equity Partners" or the "Investment Manager"), and thereby ostensibly forfeit his valuable interest in HB Equity Associates. That "termination" was ineffective and void, and Gormin remains entitled to his Vested Percentage Interest, as defined in the Fund documents.

2. Separate and apart from their attempt wrongfully to expel Gormin, Hubregsen and Bonnet breached their agreement with Gormin to provide him with certain equity interests in assets that were acquired through transactions known as "AC 701" and "AC 702". In consideration for Gormin's work on the AC 701 and AC 702 transactions, Hubregsen, Bonnet and Gormin agreed that they would each own shares of the assets that were acquired via AC 701 and AC 702 pro rata with their ownership interests in the Fund. However, Hubregsen and Bonnet breached their agreement with Gormin by failing to distribute to him his full pro rata interest in the assets owned by AC 701 and AC 702, thereby depriving Gormin of substantial sums of money.

3. As a result of defendants' wrongful conduct, Gormin has sustained damages in an amount in excess of $3,250,000, together with interest, costs, attorneys' fees and expenses. Gormin also seeks an accounting, declaratory relief and the imposition of a constructive trust in order to protect the full financial interest to which he is entitled.

### Parties

4. Plaintiff Jonathan D. Gormin ("Gormin") is an individual who resides in the State of Texas.

5. Defendant Andrew Hubregsen ("Hubregsen") is an individual who resides in the State of New York.

2

NYC_277666.4

6.     Defendant Michael Bonnet ("Bonnet") is an individual who resides in the State of New Jersey.

7.     Defendant HB Equity Associates, LLC ("HB Equity Associates" or the "Fund GP") is a Delaware limited liability company with its principal place of business located in New York.

8.     Defendant Hubregsen Bonnet Equity Partners, L.P. (the "Fund") is a Delaware limited partnership with its principal place of business located in New York.

9.     Upon information and belief, defendant AC 701 LLC is a Delaware limited liability company with its principal place of business located in New York.

10.    Upon information and belief, defendant AC 702 Corporation is a Delaware corporation with its principal place of business located in New York.

## Relevant Facts

9.     In or about March, 2002, pursuant to an Agreement of Limited Partnership, defendants Hubregsen and Bonnet formed the Fund, a private equity fund with the primary investment objective of investing in middle-market companies with a minimum of $5 million EBITDA.

10.    Prior to starting the Fund, Hubregsen and Bonnet had been employed by Conseco, Inc.   Initially, the Fund's limited partners consisted of an approximately $40 million capital commitment from various entities controlled by or related to Conseco Capital Management, Inc. (the "Conseco Limited Partners"). The Conseco Limited Partners were the only subscribers to the Fund.

11.    In or about March, 2002, HB Equity Associates was formed by Hubregsen and Bonnet to act as the Fund General Partner, and defendants caused the HB Equity Associates Operating Agreement to be executed. At all relevant times, Hubregsen and Bonnet have been the

3

sole Managing Members of HB Equity Associates.  As part of the agreement with Conseco, Conseco initially received a 50% Profits Interest in HB Equity Associates as a Class B Limited Partner in that entity, which was reduced to 25% pursuant to Amendment No. 1 to Agreement of Limited Partnership, dated November 6, 2003.

12.     Also in or about March, 2002, pursuant to a Limited Partnership Agreement, Hubregsen and Bonnet formed HB Equity Partners.  At all relevant times, the General Partner of HB Equity Partners was HB Equity Partners, LLC, in which Hubregsen and Bonnet are the sole Managing Members.

13.     Upon information and belief, HB Equity Partners was formed to act as the investment manager for the Fund as well as for certain assets independent of the Fund owned by Conseco (the "Conseco Assets").  The Conseco Assets included certain (i) third party limited partnerships, (ii) real estate assets, and (iii) private equity investments.  The private equity investments included, but were not limited to: (i) Advent Communications & Entertainment Company, LLC ("Advent"), (ii) Brandywine Senior Care, Inc. ("Brandywine"), (iii) SGW Holding, Inc. ("SGW"), and (iv) Niagara Investment Partnership ("Niagara" and, together with Advent, Brandywine and SGW, the "PE Assets").

14.     Gormin accepted an offer of employment with HB Equity Partners on or about August 7, 2002.  Gormin has never owned any interest in HB Equity Partners.

15.     Gormin played an essential role in the operations of the Fund.  As one of only a handful of employees of the Fund (and the only employee other than Hubregsen and Bonnet to source, analyze and manage Fund investments), Gormin, among other duties, served on the boards of directors of Fund portfolio companies, was in regular contact with portfolio company management, actively arranged financing, and handled all aspects of Fund portfolio management.

16.     Over the years, Gormin's hard work provided substantial value to the Fund, and to

4

Hubregsen and Bonnet individually. Among other examples, Gormin played a key role in the acquisition of Maxima Holding Company, Inc. ("Maxima") in July of 2003, a remarkably successful investment for the Fund. Gormin held the initial conversations with Maxima's CEO, without Hubregsen's or Bonnet's involvement. After the proposed transaction nearly failed due to actions by Hubregsen and Bonnet, it was Gormin and Maxima's CFO, Avee Poston, who restarted the negotiations that subsequently led to the consummation of the transaction. The Fund ultimately consummated its acquisition of Maxima utilizing debt financing obtained through Gormin's relationship with John McCormick at GE Capital during a difficult lending environment. After the acquisition, Gormin was an essential member of the Fund's team responsible for managing the Maxima investment on the Fund's behalf. In this capacity, Gormin served on the Maxima Board of Directors and frequently traveled to Maxima's headquarters in Lancaster, Pennsylvania. Through Gormin's active management and banking contacts, he was able to arrange a refinancing of Maxima in 2005 that resulted in the Fund recouping its entire initial investment. Subsequently, in 2006, after Maxima had achieved unprecedented profits, Gormin located a purchaser, and managed and negotiated the successful sale of Maxima at a substantial profit for the Fund. It was Gormin who promoted the sale of the business and, in fact, Bonnet expressed skepticism about whether a sale could be completed at the valuations Gormin was suggesting. Ultimately, Gormin gained consensus to proceed with the sale and the price obtained was in excess of any price anticipated by Hubregsen and Bonnet. During the sale process, which spanned almost five (5) months, Gormin spent a majority of his time living in Lancaster to manage the sale process of the Company. This process included overseeing all due diligence visits, the compilation and organization of thousands of documents, and the negotiation with the buyers of Maxima. By contrast, during this period of time, Hubregsen and Bonnet spent minimal time at Maxima's headquarters and provided limited support on the transaction. As a result of Gormin's

5

personal sacrifices and hard work, the sale of Maxima resulted in Hubregsen and Bonnet ultimately earning profits in excess of $20 million each.   The profits earned by Hubregsen and Bonnet on the Maxima sale represented 100% of the total profits earned by Hubregsen and Bonnet on Fund investments.   In sum, Gormin's work in connection with the Maxima deal made Hubregsen and Bonnet multimillionaires, wealth that Hubregsen and Bonnet would never have achieved without Gormin's work.

17.    In consideration for Gormin's substantial efforts in promoting the interests of the Fund, Pursuant to Amendment No. 2 to Operating Company Agreement of HB Equity Associates, LLC, on or about December 31, 2003, Gormin was admitted as a non-voting Member to HB Equity Associates.

18.    Gormin received a 9.375% non-voting "Percentage Interest" (as defined in Amendment No. 2) in HB Equity Associates pursuant to Amendment No. 2.   Hubregsen and Bonnet remained as the Managing Members and each of their Percentage Interest was reduced from 50% to 43.3125%.   Gormin's Percentage Interest represented 12.5% of the total Profits Interest of the Managing Members (at that time the Managing Members received 75% of HB Equity Associates Profits Interest and Conseco received 25%).   Gormin paid Hubregsen and Bonnet – as the Managing Members – cash equal to 12.5% of each of their capital contributions in consideration for his purchase of Gormin's Percentage Interest.

19.    Gormin's Percentage Interest in the Fund GP vested according to a schedule set forth in Section 1.1.5 of Amendment No. 2:

      1.1.5    Vesting of Percentage Interest.  JG's Percentage Interest shall vest (i) in equal annual installments of 20% on each January 1 of 2004, 2005, 2006, 2007 and 2008, or (ii) if greater as of any date, in the percentage determined by dividing the amount of capital actually contributed by JG to the Fund GP as of such date by the aggregate amount of capital committed by JG to the Fund GP as of such date, subject to the following:

6

(a)   <u>Death or Disability</u>. Notwithstanding <u>Section 2.6.3.3</u> of the Original Agreement, the vesting of JG's Percentage Interest shall cease as of the date of his death or Disability.

(b)   <u>Voluntary Resignation</u>. Notwithstanding <u>Section 2.6.3.1</u> of the Original Agreement, in the event that JG resigns his employment with the Investment Manager for any reason, then effective as of his Termination Date, JG's Percentage Interest that is unvested shall be forfeited and up to 70% of his vested Percentage Interest, as determined by the Managing Members in their sole discretion, should be forfeited.

(c)   <u>Termination for Cause</u>. Notwithstanding <u>Section 2.6.3.2</u> of the Original Agreement, in the event that JG's employment with the Investment Manager is terminated for Cause, then effective upon his Termination Date, JG shall forfeit all of his unvested Percentage Interest and up to 100% of his vested Percentage Interest, as determined by the Managing Members in their sole discretion, should be forfeited.

(d)   <u>All Other Terminations</u>. Notwithstanding <u>Section 2.6.3.3</u> of the Original Agreement, in the event JG's employment with the Investment Advisor is terminated for reasons other than as set forth in <u>subsections (a)</u>, <u>(b)</u> or <u>(c)</u> above, (x) if such Termination Date is prior to the closing date of the first capital commitments to the Fund by an investor other than Conseco or its Affiliate (the "<u>Benchmark Date</u>"), then JG's Percentage Interest shall vest in full as of the Termination Date and (y) if such Termination Date is after the Benchmark Date, JG's vested Percentage Interest shall be equal to 50% of the Percentage Interest set forth on <u>Schedule A</u> or, if greater, the amount vested on the day prior to the Termination Date.

(e)   <u>Automatic Vesting</u>. JG's Percentage Interest in respect of a Portfolio Company will automatically vest upon a liquidity event for the Portfolio Company. JG's Percentage Interest will automatically vest upon the liquidation and dissolution of the Fund.

20.   In accordance with §1.1.5 of Amendment No. 2, Gormin's Percentage Interest in the HB Equity Associates became fully vested as of January 1, 2008.

21.   Pursuant to Amendment No. 3 to the Agreement of Limited Partnership, dated March 31, 2004, the Conseco Limited Partners reduced their capital commitment to the Fund by $10,000,000 and Conseco's Profits Interest in HB Equity Associates was reduced from 25% to zero. At or about the same time, pursuant to Amendment No. 3 to Operating Agreement of HB Equity Associates dated as of March 31, 2004, Gormin's Percentage Interest in HB Equity Associates increased from 9.375% to 11.4% but his Profits Interest (which had increased from

7

75% to 100%) decreased from 12.5% to 11.4%, despite the fact that Gormin had paid the Managing Members an amount equal to 12.5% pursuant to Amendment No. 2 to Operating Agreement of HB Equity Associates.   This inequitable treatment of Gormin foreshadowed Hubregsen and Bonnet's subsequent illegal acts.

22.    Although Amendment No. 3 to Operating Agreement is dated as of March 31, 2004, it was not executed upon information and belief until some time in 2005.

23.    On or about February 7, 2005, Hubregsen, Bonnet and Conseco executed a Term Sheet by which Hubregsen and Bonnet agreed to purchase from Conseco (i) their limited partnership interests in the Fund, and (ii) the Member Interest owned by the Conseco entity 40/86 Advisors, Inc. in HB Equity Associates.   At the time, the Fund had ownership interests in two portfolio companies, Maxima and MES I Acquisition, Inc. ("MES").

24.    The Term Sheet was consummated in late 2005 through a Purchase and Assumption Agreement.   Although the Purchase and Assumption Agreement is dated as of February, 2004, upon information and belief it was not executed until some time in late 2005.

**Gormin's Unlawful Termination**

25.    By 2008, Gormin had made Hubregsen and Bonnet more than $20 million each on the Maxima investment; $7 million of proceeds of the Maxima sale (of which approximately $5 million would be distributed to the Fund upon its release) had been placed in escrow and was to be released over time depending on certain events, and the Fund continues to own MES which the Fund values at almost $15 million.   Gormin, however, has been wrongfully prevented from receiving his pro rata share of the remaining escrowed proceeds of the Maxima sale and his almost $1.7 million ownership interest in MES by Hubregsen and Bonnet, who rather than paying Gormin his entitlement decided to manufacture "cause" to terminate him.

26.    "Cause" is defined in the Fund GP Operating Agreement as when a Member has

8

"materially breached this Agreement or the Fund Agreement and failed to cure such breach within 45 days after receipt of written notice thereof..."   See HB Equity Associates Operating Agreement, Article One.

27.    By letter dated April 10, 2008, Hubregsen and Bonnet, as Managing Members of HB Equity Associates, delivered a letter to Gormin purporting to terminate him for "Cause" as defined in the HB Equity Associates Operating Agreement, and notifying him that he would forfeit 100% of his Vested Percentage Interest in HB Equity Associates, effective May 26, 2008.

28.    The April 10, 2008 letter states in relevant part:

> Pursuant to Section 2.2(g) of the Partnership Agreement, as a member of and Affiliate of the General Partner and an executive officer of the General Partner, you agreed to make available to the Partnership investments of which you became aware that, in the good faith judgment of the General Partner, represent appropriate investment opportunities for the Partnership. It has come to our attention that while you were a member of the General Partner, a limited partner of the Partnership, an Affiliate of the General Partner and an employee of HB Equity Partners, L.P., you were aware of one or more investment opportunities and did not bring these opportunities to the attention of the Partnership. Not only did you fail to bring these opportunities to the attention of the Partnership, you actively sought out investment opportunities on behalf of third parties unaffiliated with the Partnership. This letter is to notify you that the foregoing constitutes a material breach of the Partnership Agreement (the "Material Breach").

> Without further action by the Investment Manager or the General Partners, you are hereby notified that your employment with the Investment Manager is terminated for Cause as defined in the Operating Agreement. Pursuant to Section 1.1.5(c) of Amendment No. 2 to the Operating Agreement you will forfeit 100% of your Vested Percentage Interest, as determined by and acknowledge by the Managing Members of the General Partner, effective May 26, 2008.

29.    Contrary to the allegations set forth in the April 10, 2008 letter Gormin did not breach Section 2.2(g) of the Partnership Agreement.

30.    Gormin is not and was not obligated to make available to the Partnership investment opportunities.

31.    The only parties obligated to bring investment opportunities to the Partnership are "the General Partner, the then managing members of the General Partner, the Investment Manager,

9

NYC_277666.4

its then members of the Board of Directors and executive officers and their respective Affiliates…". See Partnership Agreement §2.2(g).

32.   Gormin is not and never was a managing member of the General Partner (Hubregsen and Bonnet are the sole managing members).

33.   Gormin is not and never was a member of the Board of Directors or an executive officer of the Investment Manager.

34.   Gormin is not an "Affiliate" as that term is defined in §1.1(c) of the Partnership Agreement.

35.   HB Equity Associates, not Gormin, is the Fund's General Partner.

36.   Accordingly, Gormin had no duty to bring investment opportunities to the Partnership's attention.

37.   Even if Gormin had been obliged to bring investment opportunities to the Partnership's attention, he did not breach this obligation. The April 10, 2008 letter fails to identify the investment opportunities Gormin allegedly failed to bring to the Partnership. In response to the letter, Gormin's counsel delivered a letter dated May 7, 2008, in which he denied that Gormin had breached his obligations and demanded that the defendants "specifically identify in writing any and all investment opportunities that you believe Mr. Gormin has failed to bring to the Partnership's attention." In response, Gormin received a letter dated May 27, 2008, merely reiterating that Gormin was terminated for Cause and notifying him that he has forfeited 100% of his Vested Percentage Interest.

38.   The defendants have never identified any investment opportunity that Gormin allegedly failed to bring to the Partnership's attention, and, indeed, there were none.

39.   On or about June 22, 2008, Gormin received a distribution from the Fund related to the Maxima investment, but Gormin did not receive a distribution at that time for his member

10

interest in the Fund GP, even though Gormin was entitled to same. Gormin should have received, and is entitled to more than $165,000 for his pro rata share of the Maxima distribution in accordance with his member interest in the Fund GP. Rather than distribute the Maxima proceeds to Gormin, upon information and belief Hubregsen and Bonnet have distributed those monies to themselves, in violation of the their fiduciary and contractual obligations. Additionally, there remains approximately $5 million (approximately $3.6 million to be received by the Fund) in future Maxima distributions that Gormin is entitled to receive his pro rata share of, but will not due to his wrongful termination.

### AC 701 and AC 702

40.     In or about May, 2004 Conseco discussed with HB Equity Partners its desire to sell its ownership interest in the PE Assets. Following those discussions, HB Equity Partners sought a purchaser for the PE Assets.

41.     Hubregsen, Bonnet and Gormin reached an agreement that they would each own an interest in the PE Assets pro rata based upon their respective Profits Interest in HB Equity Associates.

42.     At the time Hubregsen, Bonnet and Gormin reached their agreement, Gormin owned 12.5% of the HB Equity Associates' Profits Interest not owned by Conseco, which is the percentage the parties agreed Gormin would receive in the PE Assets (net of any amount owned by third party investors).

43.     In or about June, 2004 Gormin contacted Mark Cirilli ("Cirilli) of Marshall Street Management and Charles Preston ("Preston") of 220 Partners, LLC ("220 Partners") to acquire the PE Assets from Conseco. Upon information and belief, Cirilli and Preston were the only persons contacted regarding acquiring the PE Assets. Once again, similar to the Maxima transaction, it was solely due to Gormin's contacts that Hubregsen and Bonnet were able to acquire the PE

11

Assets. In fact, if Gormin had not successfully recruited Preston to take the lead role on the acquisition of the PE Assets, the terms would have been substantially worse for Hubregsen, Bonnet and Gormin, if the transaction could have been completed at all.

44.     Preston committed to the acquisition and proceeded to engage in purchase discussions with Conseco. In exchange, 220 Partners received a 6% interest in the PE Assets, thereby leaving Hubregsen, Bonnet and Gormin with a 94% interest. Gormin was therefore entitled to an 11.75% interest in the PE Assets (94% x .125).

45.     Preston was a party to discussions confirming Gormin's 11.75% ownership interest in the PE Assets, and, upon information and belief, would not have closed the transaction with Hubregsen and Bonnet if he had known Gormin was going to be 'cut out' of any portion of the transaction.

46.     Upon information and belief, Hubregsen and Bonnet's legal counsel, Mayer Brown, were likewise aware of Gormin's ownership interest in the PE Assets.

47.     On or about August 27, 2004, AC 702 Corporation ("AC 702") entered into an Asset Purchase Agreement with Bankers Life and Casualty Company, Conseco Health Insurance Company, Conseco Insurance company, Conseco Life Insurance Company and Conseco Senior Health Insurance Company (collectively the "Conseco Entities").

48.     The Asset Purchase Agreement provided AC 702 with the right to acquire the PE Assets from the Conseco Entities until November 30, 2004.

49.     Upon information and belief, AC 702 purchased Advent, SGW and Brandywine on that date.

50.     On or about August 27, 2004, Hubregsen, Bonnet and Preston entered into the AC 702 Stockholders Agreement.

12

51.     Despite the fact that Gormin had brought Preston in to facilitate the transaction and in breach of the parties' agreement, Gormin's name and interest did not appear on the AC 702 constitutive documents or the AC 702 Stockholders Agreement. Gormin immediately complained to Hubregsen about this omission, and was told by Hubregsen in response that Gormin's interest would be taken care of at a later date.

52.     On or about September 29, 2004, AC 702 completed its purchase of Niagara and satisfied the conditions of the August 27, 2004 Asset Purchase Agreement. AC 702 owned all of the PE Assets as of September 29, 2004.

53.     On or about November 12, 2004, AC 702 entered into an Assignment Agreement with AC 701, LLC ("AC 701"). The Assignment Agreement transferred ownership of Advent, SGW and Brandywine to AC 701. Niagara remained an AC 702 asset.

54.     On or about February 23, 2005, Hubregsen and Bonnet provided Gormin with the Limited Liability Company Agreement of AC 701, LLC, dated August 30, 2004, by and between AC 701, Hubregsen, Bonnet, Preston and Gormin (the "AC 701 Company Agreement").

55.     Contrary to the agreement between Hubregsen, Bonnet and Gormin, the AC 701 Company Agreement reduced Gormin's ownership interest to 10%, rather than the agreed-upon 11.75% interest.

56.     Niagara was excluded from AC 701 and remained an asset of AC 702.

57.     In or about February, 2005 Gormin reminded Hubregsen of their agreement that each of them would own an interest in the PE Assets equal to their pro rata interest in the Fund GP.

58.     Gormin subsequently signed the 701 Company Agreement to allow the transaction to close, but disputed that he was entitled to 10% rather than the agreed-upon 11.75% interest.

13

59.     Gormin provided valuable consideration for his ownership interest in the PE Assets, including but not limited to by identifying and recruiting Preston to lead the purchase of the PE Assets.

60.     Gormin has never received his full pro rata interest in the PE Assets. Gormin's ownership interest in Advent, SGW and Brandywine wrongfully was reduced from 11.75% to 10%. Gormin's interest in Niagara wrongfully has been reduced from 11.75% to zero.

61.     To date, AC 701 has distributed almost $15 million. Upon information and belief, AC 702 had made several million dollars of distributions.

62.     Upon information and belief, AC 701 and AC 702 will make substantial cash distributions in the future.

63.     Gormin is due and owing his pro rata share of past and future distributions by AC 701 and AC 702.

## FIRST CAUSE OF ACTION
(Breach of HB Equity Associates, LLC Operating Agreement against HB Equity Associates)

64.     Gormin realleges and incorporates by reference paragraphs 1 through 63 above as if set forth fully herein.

65.     In accordance with Amendment No. 2 to Operating Company Agreement of HB Equity Associates, LLC, Gormin's Percentage Interest fully vested as of January 1, 2008.

66.     Gormin has fully performed his obligations under the HB Equity Associates, LLC Operating Agreement, as amended.

67.     Defendant HB Equity Associates, LLC has breached the Operating Agreement by unlawfully terminating Gormin from the Investment Manager and stripping him of his Vested Percentage Interest in HB Equity Associates, LLC.

68.     As a result of HB Equity Associates, LLC's breach of its contractual

14

obligations, Gormin has sustained damages in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
(Breach of Fiduciary Duty against Hubregsen and Bonnet)

69.   Gormin realleges and incorporates by reference paragraphs 1 through 63 above as if set forth fully herein.

70.   As the Managing Members of HB Equity Associates, LLC Hubregsen and Bonnet each owed Gormin, as a non-voting minority Member of HB Equity Associates, LLC, fiduciary duties, including duties of loyalty, good faith and fair dealing.

71.   Hubregsen and Bonnet violated their fiduciary duties to Gormin by directing HB Equity Associates, LLC unlawfully to terminate Gormin and strip him of his Vested Percentage Interest, thereby enriching themselves as the only other members of HB Equity Associates at the expense of Gormin

72.   Hubregsen and Bonnet have caused and will continue to cause Gormin to suffer significant damage in an amount to be determined at trial.

## THIRD CAUSE OF ACTION
(Declaratory Judgment)

73.   Gormin realleges and incorporates by reference paragraphs 1 through 63 above as if set forth fully herein.

74.   As set forth in this Complaint, Gormin unlawfully has been terminated from his position with the Investment Manager and has been unlawfully stripped of his Vested Percentage Interest.

75.   Gormin is entitled to all distributions of the Partnership in accordance with his Limited Partnership interest in the Partnership and his Member interest in HB Equity Associates, LLC.

76.   Gormin is in doubt as to his rights and accordingly seeks a declaratory judgment

declaring (i) Gormin as the rightful owner of an 11.4% Member interest in HB Equity Associates and (ii) declaring Gormin has the right to his pro rata portion of all distributions by the Partnership and/or HB Equity Associates, LLC.

### FOURTH CAUSE OF ACTION
(Accounting against the Fund, the Fund GP, Hubregsen and Bonnet)

77.     Gormin realleges and incorporates by reference paragraphs 1 through 63 above as if set forth fully herein.

78.     The Fund and the Fund GP, as general partner of the Fund, and Hubregsen and Bonnet, through their management, power and authority over the business of the Fund and the Fund GP, owed fiduciary duties to Gormin to account for the Fund and Fund GP funds.

79.     Accordingly, Gormin is entitled to receive, and the Fund, Fund GP and Hubregsen and Bonnet are required to provide a full accounting of all Fund and Fund GP assets and liabilities, including distributions to Fund partners and Fund GP members, respectively.  The Fund, Fund GP and Hubregsen and Bonnet are obligated to repay all amounts determined by that accounting to be due and owing to Gormin.

### FIFTH CAUSE OF ACTION
(Breach of Contract against Hubregsen and Bonnet)

80.     Gormin realleges and incorporates by reference paragraphs 1 through 63 above as if set forth fully herein.

81.     Hubregsen, Bonnet and Gormin reached an agreement that they would each own an interest in the PE Assets pro rata based upon their respective Profits Interest in the Fund GP.

82.     Gormin successfully identified and recruited the third party investor, 220 Partners, that led the purchase of the PE Assets, as well as provided other valuable services and consideration in connection with the acquisition of the PE Assets.

83.     Hubregsen and Bonnet breached their agreement with Gormin by failing to provide

16

him with his pro rata interest in the PE Assets.

84.     Hubregsen and Bonnet wrongfully have withheld the interests due and owing to Gormin.

85.     As a result of Hubregsen and Bonnet's breach of their contractual obligations, Gormin has sustained damages in an amount to be determined at trial.

**SIXTH CAUSE OF ACTION**
(Accounting against AC 701, AC 702, Hubregsen and Bonnet)

86.     Gormin realleges and incorporates by reference paragraphs 1 through 63 above as if set forth fully herein.

87.     AC 701, AC 702, Hubregsen and Bonnet, through their management, power and authority over the business of AC 701 and AC 702, owed fiduciary duties to Gormin to account for Gormin's interest in AC 701 and AC 702.

88.     Accordingly, Gormin is entitled to receive, and AC 701, AC 702, Hubregsen and Bonnet are required to provide, a full accounting of all AC 701 and AC 702 assets and liabilities. AC 701, AC 702, Hubregsen and Bonnet are obligated to repay all amounts determined by that accounting to be due and owing to Gormin.

**PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff Jonathan D. Gormin respectfully requests that the Court enter judgment in his favor and against defendants and award Gormin the following relief:

17

A.     As to Count I, compensatory damages against HB Equity Associates, LLC in an amount to be determined at trial, together with pre-judgment and post-judgment interest thereon;

B.     As to Count II, compensatory damages against Hubregsen and Bonnet in an amount to be determined at trial, together with pre-judgment and post-judgment interest thereon;

C.     As to Count III, a declaratory judgment declaring (i) Gormin as the rightful owner of an 11.4% Member interest in HB Equity Associates and (ii) declaring Gormin has the right to his pro rata portion of all distributions by the Partnership and/or HB Equity Associates, LLC;

D.     As to Count IV, a full accounting of all Fund and Fund GP assets and liabilities, including distributions to Fund partners and Fund GP members, respectively, and repayment of all amounts determined by that accounting to be due and owing to Gormin, together with pre-judgment and post-judgment interest thereon;

E.     As to Count V, compensatory damages against Hubregsen and Bonnet in an amount to be determined at trial, together with pre-judgment and post-judgment interest thereon;

F.     As to Count VI, a full accounting of all AC 701 and AC 702 assets and liabilities, and repayment of all amounts determined by that accounting to be due and owing to Gormin, together with pre-judgment and post-judgment interest thereon; and

G.     Any other relief that the Court may deem just and proper.

FOLEY & LARDNER LLP

Dated: New York, New York
       September 2, 2008

By: _____
Peter N. Wang (PW 9218)
Yonaton Aronoff (YA 3492)
FOLEY & LARDNER LLP
90 Park Avenue
New York, NY 10016-1314
(212) 682-7474

- and –

18

NYC_277666.4

Eric Greenwald (EG 7095)
GREENWALD LAW FIRM PLLC
255 West Rivo Alto Drive
Miami Beach, Florida 33139
(305) 610-9923

*Attorneys for Plaintiff Johnathan D. Gormin*